MATTER OF DURAN-MONTOYA

In SECTION 245 Proceedings

A-12354681

*Decided by Regional Commissioner September 16, 1963*

Adjustment of status under section 245, Immigration and Nationality Act, as amended, is denied, in the exercise of discretion, where applicant made no effort to legally terminate his first marriage entered into in Colombia by religious ceremony which, while not civilly recorded, is regarded as a valid marriage, prior to entering into a second marriage in the United States in 1960 with a third party with whom he has since lived in a husband-wife relationship.

This matter has been certified to the Regional Commissioner for review of the decision of the District Director denying the application for adjustment of status.

The applicant is a 29-year-old married male native and citizen of Colombia who last entered the United States at Miami, Florida on October 15, 1961 as a nonimmigrant visitor for pleasure. On November 1, 1961 he submitted the instant application for status as a permanent resident under section 245 of the Immigration and Nationality Act. The application reflects that the alien has been married only once and that he has no children. He bases his eligibility for nonquota status on his birth in Colombia.

Subsequent to the filing of the application it was determined that the alien had married Flor Angela Cortes in accordance with Catholic rites at Bogotá, Colombia on February 5, 1952. He later married M. Xiomara Cuervo, a permanent resident alien, in Miami, Florida on October 20, 1960. The District Director found that the applicant was living in a husband and wife relationship with his second spouse although his first marriage had never been legally terminated. It was concluded, therefore, that the application did not merit favorable discretionary action and it was denied on April 19, 1962.

An appeal was taken from this denial in which it was argued that the applicant's religious marriage in Bogota, Colombia was not legally binding since it was not registered civilly. In support of this position there was submitted a statement from a Bogota attorney which stated in effect that in the absence of civil registry there is

insufficient evidence of the legality of an ecclesiastical marriage. The case was thereupon remanded to the District Director for further resolution of this issue. Additional inquiries elicited the following information from the Hispanic Law Division of the Library of Congress.

The Civil Code of Colombia in force at the present time was originally adopted in 1887, and has been amended over the years. Article 19 of Law 57 states: "For all civil and political effects, marriages celebrated according to the Catholic rites are valid." Similarly, Article 50 of Law 153 reads: "Marriages celebrated in the Republic at any time, in accord with the Catholic rites, are legitimate and from the moment of administering the sacrament, will be civilly and politically effective."

Article 17 of Law 35 of 1888 and Article 2 of Law 95 of 1890 are concerned with the appointment of a civil official to attend the religious ceremony for the purpose of verifying the recording of the marriage in the civil register. The Resolution of the Minister of Government, No. 8011, of 1890 states: "The lack of intervention by the Notary or Municipal Secretary at the celebration of the Catholic weddings does not void them; and they shall have civil effects."

It was not until the enactment of Law 92 of 1938 that there was created a system of civil registry in Colombia independent of ecclesiastical registration. The provisions of Article 8 and Article 12 of Law 92 of 1938 are repeated in more detail in the regulation to this law, adopted as Decree 1003 of 1939. In both pieces of legislation, it is reflected that the entry in the civil register shall constitute prima facie proof of the proceedings recorded and of the civil status. Article 19 of Law 92 of 1938 further provides that in absence of civil registration there are four types of secondary proof: (1) Certified documents; (2) Church records; (3) Declaration of witnesses who were present at the proceedings where the civil status was acquired; (4) Notorious possession of said civil status.

Inquiries directed to the American Consul at Bogota, Colombia and the Consulate General of Colombia at New York further substantiated that there is no provision under Colombian Law for invalidation of a religious marriage on the ground of lack of civil registration.

It has been established that the applicant married Flor Angela Cortes in accordance with Catholic rites in the Parish of Nuestra Senora de Las Aguas of Bogota, Colombia on February 5, 1952 as evidenced by a certified copy of the entry in the marriage records of the parish. The applicant has advised that he married Flor Angela Cortes, seven years his senior, in a religious ceremony because he

believed her to be pregnant as a result of premarital relations. He claims, however, that he never introduced her to anyone as his wife.

The record reveals that the alien stated in his application for a nonimmigrant visa before the American Consul at Barranquilla, Colombia on September 2, 1960 that he was married to Flor Angela Cortes. Further, two children were born of this marriage, one on May 1, 1953 and the other in 1954 or 1955. The marital relationship was maintained until shortly before the birth of the second child, at which time they separated. The applicant has admitted that he contributed to the support of their two children on an intermittent basis until January of 1963.

The alien made no effort to legally terminate his first marriage prior to marrying M. Xiomara Cuervo on October 20, 1960. He has since lived with the latter in a husband and wife relationship and they have a child who is now about one year old.

After careful consideration of all of the foregoing factors we find that the District Director properly concluded that the instant application for adjustment of status does not merit the favorable exercise of discretion authorized by section 245 of the Act. Accordingly, his decision will be affirmed.

*It is ordered* that the District Director's decision denying the application as a matter of discretion be and same is hereby affirmed.

768-456-65 —50